UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                    :

ROBERT MEEKER and AMY MEEKER,      :
individually and on behalf of CARYS MEEKER, :
a minor,                                    :
                                    :

                  Plaintiffs,        :

                                    :

           -v-                        :

STARFISH CHILDREN'S SERVICES;      :
MICHAEL J. BOSMANN; STEPHEN WALL;  :
PATRICK McLAUGHLIN; DEBORAH       :
COFFEY; and KATHYRN ANNE LITTLE,   :
                                    :

                  Defendants.    :
                                    :
------------------------------------------------------------ X

| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: <u>October 11, 2016</u> |

16-cv-2263 (KBF)

<u>MEMORANDUM</u>
<u>OPINION & ORDER</u>

KATHERINE B. FORREST, District Judge:

       Plaintiffs Robert Meeker and Amy Meeker ("plaintiffs") bring this diversity

action on behalf of their minor daughter, Carys Meeker ("Carys"), against Starfish

Children's Services ("Starfish") and several Starfish employees and members of the

Starfish board of directors.  (Compl. ¶¶ 10-12; ECF No. 1.)  Plaintiffs allege various

state-law claims related to the adoption of Carys.  On June 22, 2016, defendants

filed a motion to dismiss for lack of personal jurisdiction, improper venue, and

failure to state a claim on which relief can be granted.  (ECF No. 43.)  Plaintiffs

proceeded to dismiss voluntarily defendants Stephen Wall, Deborah Coffey, and

Kathryn Anne Little.  (ECF Nos. 43, 50, & 51.)  On August 29, 2016, plaintiffs filed

an opposition to the motion to dismiss voluntarily dismissing their claims of breach

of contract and endangering the welfare of a child, and opposing dismissal of their remaining claims. (ECF No. 52.)

For the reasons set forth below, defendants' motion to dismiss for improper venue is GRANTED.  The Court need not reach defendants' jurisdictional and merits arguments.

I.    BACKGROUND

Plaintiffs are all citizens of Texas.  (Compl. ¶¶ 7-9.)  Carys is an eight-year-old child whom Robert and Amy Meeker adopted from China in 2015.  (Compl. ¶ 19.)  Prior to her adoption, Carys lived in Starfish-managed fosters home in China.  (Id. ¶ 16.)  She suffers from serious medical conditions including severe epilepsy, hydrocephalus, cerebral palsy, scoliosis, brain cerebellar dysplasia, severe impairment of hearing and vision, and Hepatitis C, and she is expected to have a shortened lifespan.  (Id. ¶ 22.)  Carys also suffers from self-harming behavior, sleeping difficulties, and rotten teeth that required dental surgery after her adoption.  (Id.)  Plaintiffs allege that in the first eleven months after Carys's adoption, they spent over $500,000 on her medical care and that her care is expected to cost multiple millions of dollars over her lifetime.  (Id. ¶ 39.)

Plaintiff's claims revolve around a core allegation that defendants knew but did not disclose the full extent of Carys's illnesses.  (Compl. ¶ 29, 36.)  In a September 25, 2012, email between two China-based Starfish employees, one employee asks for "'best in show' photos of [Carys] looking her best" to include in her adoption file because Carys's "current profile has some really horrible photos in

2

her adoption file which doesn't bode well for her getting a forever family[.]"  (Id. ¶ 33.)  The next day, a China-based Starfish employee emailed, to a Tennessee-based Starfish board member and another individual, a description of Carys for the Starfish website that differed from the employee's internal description of Carys's behavior and illnesses.  (Compl. ¶ 30.)  An email and Chinese hospital record from October 2012 state that Carys had been diagnosed with epilepsy, brain malformation, and cerebral palsy, and lay out Starfish's medical care plan for her. (Id. ¶¶ 23, 24.)

Plaintiffs allege that a different family intended to adopt Carys prior to the Meekers but that "the adoption fell through."  (Compl. ¶ 36.)  On January 9 and 10, 2013, a China-based Starfish employee told New York-based Starfish board president Patrick McLaughlin ("McLaughlin") by email that the employee did not know what medical information was in Carys's file.  (Id. ¶ 34.)  The employee expressed concern that the first adoptive family "will arrive and refuse the adoption because [Carys's] condition was not well represented."  (Id. ¶ 35.)  On September 25, 2013, McLaughlin wrote an email to China-based Starfish employees instructing them, inter alia, to be "an advocate for [Carys]" and not for her potential adoptive family.  (Id. at ¶ 32.)  McLaughlin's email explained that the employees' "role is to smile, nod and clap when appropriate if asked about [Carys]."  (Id.)

Plaintiffs state they learned about Carys via the Starfish website in May 2013.  (Id. ¶ 17.)  They allege that they reviewed the Starfish website, which stated that Starfish "create[s] a medical history file for each child that details their history

from the day they arrived to the day they are adopted." (Id. ¶ 17.)  Amy Meeker
traveled to China to visit Carys in October 2013 and, plaintiffs allege, was not told
about "all of [Carys's medical] conditions Amy could not see with her naked eye."
(Id. ¶ 29.)  After the Meekers' adoption of Carys was finalized, Robert Meeker flew
to China in April 2015 and brought her back to Texas with him.  (Id. ¶ 19.)
Plaintiffs allege that in China, Robert was given medication that she had been
taking "for years" but about which he had not been told until that day and for which
he was given no instructions.  (Id. ¶ 21.)  They also allege that they had requested
medical information about Carys "two years" before her adoption and that "no one
from Starfish would provide the Meekers with any information about Carys's true
medical background" after she had been brought from China to Texas.  (Id. ¶¶ 21,
22.)  Plaintiffs allege that "[d]efendants made a representation to the Meekers that
Carys was afflicted with spina bifida and some developmental delays" but did not
mention other afflictions, and that "[d]efendants knew or should have known of
Carys's advanced conditions[.]"  (Id. ¶¶ 45, 46.)

II.    LEGAL PRINCIPLES

    Pursuant to 28 U.S.C. § 1406(a), "[t]he district court of a district in which is
filed a case laying venue in the wrong division shall dismiss, or if it be in the
interest of justice, transfer such case to any district or division in which it could
have been brought."  In a federal diversity action, venue is proper in the chosen
forum (1) if all defendants reside in the same state and at least one defendant
resides in the district; (2) if a "substantial part" of the events giving rise to the

claims occurred in the district; or (3) if the defendant is subject to personal jurisdiction in the district and "there is no district in which an action may otherwise be brought[.]"  28 U.S.C. § 1391(b)(1)-(3).  "Once an objection to venue has been raised, plaintiff bears the burden of proving that venue is proper." Hsin Ten Enters. USA, Inc. v. Clark Enters., 138 F. Supp. 2d 449, 457 (S.D.N.Y. 2000).  In analyzing whether this standard is met the Court views all facts in the light most favorable to plaintiff.  Phillips v. Audio Active, Ltd., 494 F.3d 378, 384 (2d Cir. 2007).

It is undisputed that defendants do not all reside in the same state; the Court therefore analyzes the propriety of venue under § 1391(b)(2) and § 1391(b)(3).  The Second Circuit has "caution[ed] district courts to take seriously the adjective 'substantial'" in § 1391(b)(2), "mean[ing] for venue to be proper, significant events or omissions material to the plaintiff's claim must have occurred in the district in question[.]" Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 357 (2d Cir. 2005) (internal citation omitted) (emphasis in original).  To determine whether venue is proper under § 1391(b)(2), "a two-party inquiry is appropriate.  First, a court should identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims.  Second, the court should determine whether a substantial part of those acts or omissions occurred in the district where suit was filed[.]" Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 432 (2d Cir. 2005).  "Only the events that directly give rise to a claim are relevant," and courts should "consider[]

5

as relevant only those acts and omission that have a close nexus to the wrong[.]"

Jenkins Brick Co. v. Bremer, 321 F.3d 1366, 1371-72 (2d Cir. 2003).

## III.   DISCUSSION

The facts proffered by plaintiffs cannot support venue in the Southern District of New York because they do not allege conduct in this district that could possibly constitute a "substantial part" of the acts or omissions giving rise to their claims.  Daniel, 428 F.3d at 432.  Following the two-step analysis from Daniel and Jenkins, the Court first analyzes the nature of the claims and what alleged acts gave rise to the claims, and, second, asks "[o]f those acts, did a 'substantial part' of them take place" in this district?  Jenkins, 321 F.3d at 1372.  First, the "nature of the claims" are state-law torts, the elements of which include a duty to plaintiffs, knowingly false representations, detrimental reliance upon those representations, and damages; the relevant "acts and omission related that plaintiff[s] allege[] give rise to those claims" include statements on the Starfish website viewed by the plaintiffs, statements made to the plaintiffs by Starfish employees in China, and a September 2013 email from McLaughlin to Starfish employees in China.  Daniel, 428 F.3d at 408.

Second, the Court analyzes whether a "substantial proportion" of the acts or omissions giving rise to the claims took place in the chosen forum.  Plaintiffs were living in Texas when they visited defendants' website and saw the allegedly misleading statement regarding adoptee medical files.  Plaintiffs were living in Texas when they received communications from Starfish and Starfish employees

6

based in China.  The agreements between the Meekers and Starfish were executed in Texas and in Washington, respectively.  (Bosmann Dec. Ex. B-D.)  Plaintiffs' alleged damages arise primarily from the care they provided to Carys in Texas. None of these events occurred in this district.  All of the relevant events occurred in Texas, Washington, or China.

As the Second Circuit made clear in <u>Jenkins</u>, "proper venue analysis" is more rigorous than personal jurisdiction analysis; it requires not only that contacts in the district give rise to the legal claims, but also that they are a "substantial part" of the acts or omissions giving rise to those claims.  <u>Jenkins</u>, 321 F.3d at 1372.  Without any allegations of specific acts or omissions in this district giving rise to plaintiff's claims, the fact that Starfish represented its principal place of business to be in New York is insufficient to establish venue here.  Plaintiffs allege that McLaughlin resides in this district, that Starfish represented on its website that its day-to-day operations occurred in New York, and that Starfish listed a Manhattan address on its corporate filings as its primary place of business, but these facts do not "have a close nexus to the wrong." <u>Jenkins</u>, 321 F.3d at 1372.  The allegation that Starfish generally ran its business from Manhattan and that the board president lived in this district does not connect any specific acts or omissions by defendants in New York to the plaintiffs' legal claims.  Therefore, these facts do not give rise to the claims alleged and are not properly considered in the second step of the venue analysis.  At most, plaintiffs' complaint might be read generously to imply (as it does not allege) that because McLaughlin was a New York resident, the September

7

2013 email he sent to Starfish employees in China was likely sent from this district. But a single email sent to Starfish employees in China—not to plaintiffs—does not constitute a "substantial part" of the acts giving rise to plaintiffs' claims of misrepresentation.  <u>Daniel</u>, 428 F.3d at 432; <u>see also</u> <u>Jenkins</u>, 321 F.3d at 1371 ('[O]nly those locations hosting a 'substantial part' of the events are to be considered.").  Therefore, because plaintiffs have not alleged that a substantial part of the acts or omissions giving rise to their claims occurred in this district, venue is improper under § 1931(b)(2).

Plaintiffs also fail to establish venue under § 1931(b)(3).  The Second Circuit has explained that § 1931(b)(3)'s "phrase 'if there is no district in which the action may otherwise be brought' indicates that venue may be based on that subsection only if venue cannot be established in another district pursuant to any other venue provision."  <u>Daniel</u>, 428 F.3d at 434. As discussed <u>supra</u>, a significant number of the acts and events alleged by plaintiffs in support of their legal claims occurred in Texas and in Washington.  Indeed, plaintiffs state in their opposition to this motion that "venue could have been proper in the Western District of Washington[.]"  (Pl. Opp. at 17.)  Plaintiffs have therefore failed to establish that "there is no district in which the action may otherwise be brought."  § 1391(b)(3).

IV.   CONCLUSION

For these reasons, venue is not proper in the Southern District of New York, and the Court need not reach the questions of personal jurisdiction or the sufficiency of the complaint to state a claim.  Neither party has requested transfer

to a different district under 28 U.S.C. § 1406(a), and the facts are insufficient for the Court to conclude that such a transfer would be both proper and in the interests of justice.  The complaint is therefore dismissed without prejudice for improper venue. The Clerk of Court is directed to close the motion at ECF No. 34 and to terminate this action.


        SO ORDERED.

Dated:        New York, New York
              October 11, 2016


                                        _____
                                            KATHERINE B. FORREST
                                            United States District Judge